Gregory R. Rauch ISB# 7389
Alex Gluszczak ISB# 12260
Magyar, Rauch & Associates, PLLC
Attorneys at Law
326 E 6th Street
Moscow Idaho 83843
Tel: (208) 882-1906
Fax: (208) 882-4540

*Attorneys for Amicus Curiae*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| *In Re Brooks M. Witzke* | Misc. Dkt No. 1:24-cv-00044 |

## AMICUS CURIAE BRIEF OF SEVERAL MEMBERS OF THE BAR OF THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF IDAHO

This brief is submitted on behalf of various members of the Bar of this District[1] in support of the Petition of Brooks M. Witzke ("Witzke") for admission to the bar of this Court despite the absence of Idaho State Bar licensure.

### INTRODUCTION

While Witzke's history with the Idaho State Bar ("ISB") and the resulting federal cases before this Court are extensive and span over the past two (2) years, the crux of the issue before this Court is rather straightforward: should this Court issue Witzke a license to practice before it even though the ISB denied his admission to the state bar and is currently petitioning the Idaho Supreme Court to "disbar" him for five (5) additional years? Usually, the answer to this question would be a perfunctory "NO." However, Witzke's situation is unique in that the ISB denied his

---

[1] The *amici* are: Gregory R. Rauch, Lawrence A. Moran, Michael Alexander Gluszczak, and Peter J. Dan.

AMICUS CURIAE BRIEF OF SEVERAL MEMBERS OF THE BAR OF THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF IDAHO - 1

2022 bar application solely because of his litigation activities before this Court; cases where Witzke was forced to challenge unconstitutional delays in order to avoid the imminent loss of his Multistate Bar Exam ("MBE") score. Witzke then reapplied for admission in 2023 and the ISB singled him out and refused to process his bar application. Instead, the ISB immediately filed a Petition to the Idaho Supreme Court to create a rule on this *one occasion* to hold Witzke out of the bar for an additional five (5) years.

In the ISB's Petition to the Idaho Supreme Court seeking enforcement of a non-existent rule, they alleged that Witzke should be barred for another five (5) years because he has engaged in "vexatious conduct and his use of litigation against those he perceives to have wronged him" and that "[p]rocessing Witzke's Third Application also includes the risk of exposing the ISB and its employees and volunteers to further litigation by Witzke when the application is not processed according to his standards[2]."

While the ISB claimed in its Petition to the Idaho Supreme Court that Witzke's litigation activities were a "vexatious" abuse of the litigation process "against those he perceives to have wronged him," this Court expressly found otherwise when addressing the ISB's allegations. *See Witzke v. Idaho State Bar*, No. 1:22-cv-00478-REP, 2024 U.S. Dist. LEXIS 5678, at *8, 8 n.3 (D. Idaho Jan. 9, 2024) ("the merits of this claim are far from frivolous . . . the delay was clearly long enough to raise legitimate Fourteenth Amendment concerns."). The same went for the imminent loss of Witzke's MBE score that was the focus of Witzke's pursuit of a preliminary injunction, as this Court ultimately found that such loss *did* constitute irreparable harm:

> The loss of Plaintiff's passing MBE score, however, is more likely than not irreparable. While Plaintiff may have passed the MBE before, him passing it again is no foregone conclusion. While Plaintiff has proven his aptitude for the MBE once before, he is at a different place in his life now. He is years removed

---

[2] While not produced as an exhibit due to the confidential nature of ISB admissions records, Witzke has advised the Court staff via email that the ISB's Petition is available for the Court to review under seal should the need arise.

AMICUS CURIAE BRIEF OF SEVERAL MEMBERS OF THE BAR OF THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF IDAHO - 2

> from law school and, after protracted litigation against two state bars as a result of denied applications, perhaps without the same vigor for taking the MBE again. It is no guarantee that he passes the second time around. Nor is the harm from having to take the MBE again readily quantifiable in monetary terms. Indeed, the many hours of studying, the taking of practice tests, the stress of taking the MBE exam, and the agonizing wait before hearing the results cannot be neatly reduced to a dollar figure. As such, Plaintiff has demonstrated a likelihood of irreparable harm.

*Witzke v. Idaho State Bar*, 647 F. Supp. 3d 943, 956-57 (D. Idaho 2022).

No person should be held out of their calling simply because they pursued peaceful redress against the government through our system of justice, especially when the government placed the individual in a position where he had no other choice. "Congress and the courts have long recognized that creating broad compliance with our civil rights laws, a policy of the 'highest priority,' requires that private individuals bring their civil rights grievances to court. Even when unsuccessful, such suits provide an important outlet for resolving grievances in an orderly manner and achieving nonviolent resolutions of highly controversial, and often inflammatory, disputes." *Harris v. Maricopa Cty. Superior Court*, 631 F.3d 963, 971 (9th Cir. 2011) (internal citation omitted).

For the reasons discussed *infra*, this Court is respectfully requested to deviate from the decision of the ISB and issue Witzke a license to practice law before it so that he can begin using his talents to serve the public.

[SPACE INTENTIONALLY LEFT BLANK]

# ARGUMENT

"[A] federal court has the power to control admission to its bar and to discipline attorneys who appear before it." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43, 111 S. Ct. 2123, 2132 (1991). "While this power 'ought to be exercised with great caution,' it is nevertheless 'incidental to all Courts.'" *Id.* (quoting *Ex parte Burr*, 22 U.S. 529, 9 Wheat. 529, 531, 6 L. Ed. 152 (1824)). "[U]nder *Frazier v. Heebe*, 482 U.S. 641, 96 L. Ed. 2d 557, 107 S. Ct. 2607 (1987), [federal courts have] inherent supervisory power to ensure that rules governing the practice of law in the federal district courts are 'consistent with the principles of right and justice.'" *In re North.*, 383 F.3d 871, 877 (9th Cir. 2004). "'[A]dmission to practice law before a state's courts and admission to practice before the federal courts are separate, independent privileges,' 'even when admission to a federal court is predicated upon admission' to a state bar." *Thorpe Insulation, Co. v. J.T. Thorpe Settlement Tr. (In re J.T. Thorpe, Inc.)*, 870 F.3d 1121, 1135 (9th Cir. 2017) (quoting *Brown v. Smith (In re Poole)*, 222 F.3d 618, 620 (9th Cir. 2000)) (ellipses omitted).

"The Ninth Circuit considers 'bar admission restrictions to be time, place, and manner restrictions on speech.'" *Thaw v. Lynch*, No. 2:15-cv-01703 JWS, 2016 U.S. Dist. LEXIS 34938, at *15 (D. Ariz. Mar. 15, 2016) *aff'd* 712 F. App'x 604 (9th Cir. 2017) (quoting *Nat'l Ass'n for the Advancement of Multijurisdiction Practice v. Berch*, 773 F.3d 1037, 1047 (9th Cir. 2014). "As the Ninth Circuit noted in *Brown v. Smith (In re Poole)*, 222 F.3d 618, 620-21 (9th Cir. 2000), federal courts have the power to control the admission and discipline of attorneys that appear before it, notwithstanding contrary state law regulations governing the practice of law." *Williams v. McDermott & Trayner, P.C. (In re White Mt. Cmtys. Hosp., Inc.)*, No. AZ-04-1569-MoSB, 2006 Bankr. LEXIS 4844, at *16 (B.A.P. 9th Cir. Mar. 21, 2006).

> "A federal court may **admit** an attorney to practice **despite a state court judgment to the contrary**. These conditions are present when (1) the state procedure is lacking in due process because of no notice or opportunity to be heard; (2) the factual findings suffer from an infirmity of proof; or (3) "some other grave reason"

exists which would allow the attorney's admission to the federal bar. *In re Leaf*, 41 F.3d at 283 (citing *Selling v. Radford*, 243 U.S. 46, 51, 61 L. Ed. 585, 37 S. Ct. 377 (1917)).

*In re Poulakidas*, No. 96-3779, 1998 U.S. App. LEXIS 2689, at *3 (7th Cir. Feb. 17, 1998); *see also In re Rheinstrom*, No. 96-2561, 1997 U.S. App. LEXIS 4092, at *3 (7th Cir. Mar. 4, 1997) ("There are three instances in which a federal court may <u>admit to practice</u> an attorney who has been <u>disbarred by a state</u> . . .") (emphasis added); *In re Yagman*, 38 F.4th 25, 34 (9th Cir. 2022) (Berzon, dissenting) (observing that the *Selling v. Radford* factors should be applied in equal force to federal admissions and reinstatement matters and require a federal court to admit a bar applicant even in the face of a state court denial of admission)

> Federal courts are not conclusively bound by a state court's disciplinary action. *See In re Kramer*, 282 F.3d 721, 723 (9th Cir. 2002) ("*Kramer II*") (citations omitted). They have the "authority to supervise and discipline the conduct of attorneys who appear before them." *Id.* (internal quotation marks and citation omitted). A federal court may properly impose "reciprocal discipline on a member of its bar based on a state's disciplinary adjudication unless an independent review of the record reveals: (1) a deprivation of due process; (2) insufficient proof of misconduct; or (3) grave injustice which would result from the imposition of such discipline." *Id.* at 724 (citations omitted); *see Selling*, 243 U.S. at 50-51.

*In re Dubin*, No. 20-00419 JAO-KJM, 2021 U.S. Dist. LEXIS 189771, at *28-29 (D. Haw. Sep. 30, 2021) (emphasis added); *see also In re Sanai*, No. 23-80046, 2024 U.S. App. LEXIS 3724, at *1-2 (9th Cir. Feb. 16, 2024) (discussing the *Selling* factors).

1. **<u>Witzke's Litigation Activities and Diligent Pursuit of Civil Rights Violations Were Protected First Amendment Activities, Even If He Made Allegations of Serious Wrongdoing By State Bar Officials.</u>**

    The bedrock requirements of the First Amendment that the government may not transgress are clearly established by American jurisprudence, and Witzke's act of initiating (and diligently pursuing) federal litigation against the ISB strikes at the core of those fundamental freedoms. "The First Amendment 'right of the people to petition the Government for a redress of grievances,' which secures the right to access the courts, has been termed 'one of the most precious of the

liberties safeguarded by the Bill of Rights.'" *Ringgold-Lockhart v. Cty. of L.A.*, 761 F.3d 1057, 1061 (9th Cir. 2014) (quoting *BE & K Const. Co. v. NLRB*, 536 U.S. 516, 524-25, 122 S. Ct. 2390, 153 L. Ed. 2d 499 (2002) (internal ellipsis omitted). Citizens have protected rights in commenting on the conduct of government officials and in petitioning the government for redress of grievances and "it is unlawful for the government to deliberately retaliate against a citizen [by denying or delaying his application for an occupational license] for exercising his right to comment on (and publicly criticize) government officials' actions and his right to access the courts and administrative appeals process for redress of grievances." *CarePartners LLC v. Lashway*, 545 F.3d 867, 883 (9th Cir. 2008) (citation omitted).

"Our founding fathers understood that 'novel and unconventional ideas might disturb the complacent'; yet in authoring the First Amendment, they sought 'to encourage a freedom which they believed essential if vigorous enlightenment was ever to triumph over slothful ignorance.'" *Fayetteville Pub. Library v. Crawford Cty.*, No. 5:23-CV-05086, 2023 U.S. Dist. LEXIS 131427, at *16 (W.D. Ark. July 29, 2023) (quoting *Martin v. City of Struthers*, 319 U.S. 141, 143, 63 S. Ct. 862, 87 L. Ed. 1313 (1943)). "Silencing unpopular speech is contrary to the principles on which this country was founded and stymies our collective quest for truth." *Id*.

"'Freedom to criticize public officials and expose their wrongdoing is at the core of First Amendment values, even if the conduct is motivated by personal pique or resentment.'" *Id*. at *13 (quoting *Barrett v. Harrington*, 130 F.3d 246, 263 (6th Cir. 1997)).

> "[T]he law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory action . . . for speaking out." *Hartman v. Moore*, 547 U.S. 250, 256, 126 S. Ct. 1695, 164 L. Ed. 2d 441 (2006). This prohibition is based on a concept that public officials may not police which types of expression will be permitted and which will not. *See Cox v. State of La.*, 379 U.S. 536, 557, 85 S. Ct. 453, 13 L. Ed. 2d 471 (1965) ("It is clearly unconstitutional to enable a public official to determine which expressions of view will be permitted and which will not or to engage in invidious discrimination among persons or groups either by use of a statute providing a system of **broad discretionary licensing power** or, as in this case, the equivalent

> of such a system by selective enforcement of an extremely broad prohibitory statute.")

*French v. Hope*, No. 3:21-CV-670 JD, 2023 U.S. Dist. LEXIS 48424, at *9 (N.D. Ind. Mar. 22, 2023) (emphasis added).

> Christensen implies that his basis for blocking Plaintiffs from his page is that they were "rude, vexatious, annoying, or simply someone [the] defendant does not want posting on a social media page." Dkt 19-1, at 11. But as Plaintiffs correctly point out, absent a viewpoint-neutral and narrowly tailored government policy, this kind of speech ***is precisely the kind that the First Amendment seeks to protect.*** Indeed, the First Amendment reflects "a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide- open," and the speech it protects "***may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials***." *New York Times Co. v. Sullivan*, 376 U.S. 254, 270, 84 S. Ct. 710, 11 L. Ed. 2d 686 (1964).

*Graf v. Christensen*, No. 4:22-cv-00212-DCN, 2023 U.S. Dist. LEXIS 198160, at *14-15 (D. Idaho Nov. 2, 2023) (emphasis added).

### A. Witzke's First Amendment Rights Were Not Surrendered by His Status As An Attorney or Bar Applicant.

> Being a member of a regulated profession does not result in a surrender of First Amendment rights. To the contrary, professional speech may be entitled to 'the strongest protection our Constitution has to offer.'" *Id*. (internal citations omitted). "Attorneys have rights to speak freely subject only to the government regulating with 'narrow specificity.'" *Id*. (quoting *NAACP v. Button,* 371 U.S. 415, 433 (1963)). "[A] State may not, under the guise of prohibiting professional misconduct, ignore constitutional rights." *Button*, 371 U.S. at 439.

*In re Idaho State Bar Resolution 21-01*, No. 50356, at *7 (Idaho, Jan 20, 2023) (per curiam) (brackets omitted).

Here, unlike an attorney disciplinary charge, which charges an attorney with a violation of an expressly published rule that applies an objective standard, the ISB denied Witzke's 2022 Application under the guise of "good moral character" due to his litigative activities and the strong accusations of wrongdoing he made against ISB officials in his civil complaints. It is important to understand the inherently dangerous nature of the vague "good moral character" standard of bar admissions cases, which relies on a wholly subjective assessment.

> *Good Moral Character*- The term "good moral character" has long been used as a qualification for membership in the Bar and has served a useful purpose in this respect. However the term, by itself, is unusually ambiguous. It can be defined in an almost **unlimited number of ways for any definition will necessarily reflect the attitudes, experiences, and prejudices of the definer**. Such a vague qualification, which is easily adapted to fit personal views and predilections, can be a **dangerous instrument** for arbitrary and discriminatory denial of the right to practice law.

*Konigsberg v. State Bar of Cal.*, 353 U.S. 252, 262, 77 S. Ct. 722, 728 (1957) (emphasis added); *see also Dexter v. Idaho State Bar Bd. of Comm'rs*, 116 Idaho 790, 793, 780 P.2d 112, 115 (1989) ("The current administration of moral character criteria is, in effect, a form of Kadi justice with a procedural overlay . . . [p]olitically nonaccountable decisionmakers render intuitive judgments, largely unconstrained by formal standards and uninformed by a vast array of research that controverts the premises on which such adjudication proceeds . . . [s]ubstantial resources are consumed in vacuous formalities for routine applications, and non-routine cases yield intrusive, inconsistent, and idiosyncratic decision-making.") (quoting Rhode, *Moral Character as a Professional Credential*, 94 Yale L.J. 491, 584-85 (1985).

While Witzke undoubtedly pursued a diligent case against ISB officials during highly controversial litigation, no inference of bad moral character can rationally be drawn from such actions. This is so regardless of whether in seeking such redress Witzke "criticized" certain public officials in performing their duties as an administrative arm of the Idaho Supreme Court:

> [H]e **severely criticized**, among other things . . . this Court's [prior] decisions. . . . We do not believe that an inference of bad moral character can rationally be drawn from these editorials. Because of the very nature of our democracy such expressions of political views must be permitted. Citizens have a right under our constitutional system to criticize government officials and agencies. **Courts are not, and should not be, immune to such criticism**. Government censorship can **no more be reconciled with our national constitutional standard of freedom of speech and press when done in the guise of determining "moral character," than if it should be attempted directly** . . .

*Konigsberg*, 353 U.S. 252, at 268, 273, 77 S. Ct. at 731, 733 (emphasis added).

B. **First Amendment Rights to Free Speech and to Petition Are "Substantive Rights" Subject To The Federal Rules Enabling Act (28 U.S.C. §§ 2071-2072 and F.R.C.P. Rule 83).**

> Federal courts have inherent and broad regulatory authority to make rules respecting the <u>admission</u>, practice, and discipline of attorneys in the federal courts. Two sources of these rules from the Rules Enabling Act are relevant here. The first is **§ 2072**, which empowers the Supreme Court to promulgate "general rules of practice and procedure," including the Federal Rules of Civil Procedure, "for cases in the United States district courts (including proceedings before magistrate judges thereof) and courts of appeals." This authority is limited to procedural rules: **no rule may "abridge, enlarge or modify any substantive right**."
>
> The second source is **§ 2071**, which empowers courts to promulgate local rules "for the conduct of their business." This authority is limited to rules that are "consistent with Acts of Congress and rules of practice and procedure prescribed under" § 2072.

*Thaw*, No. 2:15-cv-01703 JWS, 2016 U.S. Dist. LEXIS 34938, at *6, *aff'd* 712 F. App'x 604 (emphasis added).

Ninth Circuit case law is clear that First Amendment freedoms, generally, are "substantive rights." *See McNeil v. Sherwood Sch. Dist. 88J*, 918 F.3d 700, 706 (9th Cir. 2019) (First Amendment rights are substantive rights for purposes of 42 U.S.C. § 1983); *see also Micone v. Carey*, 203 F. App'x 23, 24 (9th Cir. 2006) (quoting *Coszalter v. City of Salem*, 320 F.3d 968, 975 (9th Cir. 2003)). And more specifically, the First Amendment right to petition is considered a substantive right "cut from the same cloth as other First Amendment rights." *See Handy v. Lane Cty.*, No. 6:12-cv-01548-AA, 2017 U.S. Dist. LEXIS 1954, at *10 (D. Or. Jan. 2, 2017) (citation and quotation marks omitted).

Here, the ISB's denial of Witzke's 2022 bar application was a violation of his substantive First Amendment rights because the ISB cited solely to the federal litigation and their mere disagreement with Witzke's complaint allegations as grounds for denial. Similarly, the ISB's Petition to the Idaho Supreme Court is based on the unsubstantiated allegation that Witzke

engaged in vexatious litigation activities before this Court when he challenged the delays in his bar application(s). Notably, the ISB's allegation of frivolity is one this Court has addressed and expressly rejected in published opinions[3]. Thus, for this Court to accept the ISB's denial of state licensure as sole grounds to deny Witzke's federal licensure would be, for all practical purposes, a ratification and adoption of a licensure denial that runs directly afoul of the Federal Rules Enabling Act and the United States Constitution.

2. **This Court Cannot Countenance Any Future Decision by The Idaho Supreme Court That Grants The ISB's Petition Because The Enforcement of A Non-Existent Bar Admissions Rule Is A Textbook Substantive Due Process Violation.**

While extremely unlikely, in the event that the Idaho Supreme Court grants the ISB's Petition, this Court will maintain its obligation to independently decide Witzke's eligibility for federal licensure because allowing the state court decision to serve as a barrier to Witzke's federal licensure would violate his substantive due process rights. " . . . [T]he substantive Due Process Clause of the Fourteenth Amendment, [] provides that no state shall 'deprive any person of life, liberty, or property, without due process of law.'" *Matsumoto v. Labrador*, No. 1:23-cv-00323-DKG, 2023 U.S. Dist. LEXIS 202306, at *14 (D. Idaho Nov. 8, 2023) (Grasham, J.) (quoting U.S. Const. AMEND. XIV, § 1.8 ).

"The right to pursue an occupation is a property interest that is protected by due process." *Garske v. Dist. Court of the Fourth Judicial Dist. (In re Two Jinn, Inc.)*, 150 Idaho 647, 657, 249 P.3d 840, 850 (2011) (citing *SCHWARE v. Bd. OF BAR Exam'rs OF N.M.*, 353 U.S. 232, 238-39, 77 S. Ct. 752, 756 (1957)). "[T]he right to follow a recognized and useful occupation is a right protected by the constitutional guaranty of liberty pursuant to sections 1 and 13 of Article I of the

---

[3] *See supra*, *Witzke*, No. 1:22-cv-00478-REP, 2024 U.S. Dist. LEXIS 5678, at *8, 8 n.3 ("the merits of this claim are far from frivolous . . . the delay was clearly long enough to raise legitimate Fourteenth Amendment concerns."); *see also Witzke v. Idaho State Bar*, No. 1:22-cv-00478-REP, 2023 U.S. Dist. LEXIS 226208, at *2 (D. Idaho Dec. 18, 2023) ("Because the Plaintiff's claims are not frivolous, the Court denies Defendants' request for attorneys' fees under 42 U.S.C. § 1988(b) and for associated costs under Federal Rule of Civil Procedure 54."); *Witzke*, 647 F. Supp. 3d at 956-57 ("Plaintiff has demonstrated a likelihood of irreparable harm.").

AMICUS CURIAE BRIEF OF SEVERAL MEMBERS OF THE BAR OF THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF IDAHO - 10

Idaho Constitution." *Planned Parenthood Great Nw. v. State*, 522 P.3d 1132, 1228 (Idaho 2023) (citation omitted); *see also Juliana v. United States*, 947 F.3d 1159, 1177 (9th Cir. 2020) (right to pursue bar admission is a fundamental right to the same extent as same as the right to marry, to maintain a family, and to rear children) (citing *Schware*, *supra*). A bar applicant's "interest in practicing law in Idaho is a substantial interest." *Dexter*, 116 Idaho at 793, 780 P.2d at 115.

In *Lawrence v. Pelton*, 413 F. Supp. 3d 701, 713 (W.D. Mich. 2019), a bar applicant prevailed in a substantive due process claim when the Michigan Bar tried to enforce a non-existent bar admissions rule that would cause a passing exam score to expire after three (3) years. The court in that case found "[w]here government officials **rely on non-existent or irrelevant rules to reach an adverse decision, the governmental action can be said to be arbitrary for the purpose of a due process claim**." *Id.* at 714. (emphasis added) (citation omitted). And "[t]he Court reache[d] a narrow conclusion: assuming the three-year rule has not been properly promulgated, the rule cannot be used to deny a bar application." *Id.*

While in *Lawrence* the court found that the Michigan Bar's conduct arose to the level of "the most egregious official conduct" that was a "conscience-shocking action[]" (*see Id*. at 713), the conduct attempted here by the ISB in the filing of their Petition is significantly more egregious and conscience shocking because in *Lawrence*, the non-existent rule was purportedly being enforced against *everyone*, whereas here the ISB is trying to enforce a non-existent rule in this *one specific circumstance* against *one specific individual*. This is the paradigm of a substantive due process violation, and one that this Court cannot adopt by blindly denying Witzke a federal license based on an arbitrary state court decision.

A little closer to home, the State Bar and Attorney General in our neighboring State of Oregon found themselves in a controversial plight after an attorney successfully pled a substantive due process claim regarding him being singled out for the disproportionate

enforcement of *existing* attorney discipline rules. *Nisley v. Rosenblum*, No. 3:21-cv-01011-SB, 2022 U.S. Dist. LEXIS 170469 (D. Or. Sep. 21, 2022). In that decision, the court held:

> Nisley alleges that **other Oregon district attorneys** have been temporarily suspended from the practice of law, including one who was suspended for six months and prosecuted for related crimes, but they continued to "hold the office of district attorney, . . . be paid their regular salary and benefits, . . . [and] enjoy all of the perquisites of the office during . . . their suspension. . . . "
>
> Given these allegations, the Court finds that Nisley has plausibly alleged that Defendants **arbitrarily and unreasonably singled out Nisley and that Defendants' actions rose to the level of conduct that shocks the conscience and offends the community's sense of fair play and decency**. *Cf. Bateson v. Geisse*, 857 F.2d 1300, 1303 (9th Cir. 1988) (explaining that the "**arbitrary administration of the local regulations, which singles out one individual to be treated discriminatorily, amounts to a violation of that individual's substantive due process rights**"). For these reasons, the Court finds that Nisley has stated a plausible claim for violation of his substantive due process rights. . .

*Nisley*, No. 3:21-cv-01011-SB, 2022 U.S. Dist. LEXIS 170469, at *13-17 (emphasis added).

While the *Nisely* case was recently settled for $430,000.00[4], the level of harm being incurred by Witzke far exceeds that (or any) monetary sum, and the substantive due process violation is substantially more egregious. Unlike Mr. Nisely who was merely suspended, Witzke has been held out of his occupation *entirely* for almost five (5) years and the ISB now seeks to arbitrarily add five more years to that sentence (for a total of 10 years). Additionally, similar in how this case differed from *Lawrence,* the level of discrimination and arbitrariness in Witzke's case also far exceeds that which existed in *Nisely*. In *Nisely* the plaintiff was subject to the disproportionate enforcement of *existing* disciplinary rules, whereas here the ISB seeks to have a rule created on this one occasion to target one particular individual. This is the very essence of a substantive due process violation.

---

[4] *See* 3:21-cv-01011-SB, Dkt. 59-1, Page 1 of 9.

3. **The Court Is Requested To Take Notice of The Recent Changes in The Field of Bar Admissions Cases And Apply Them To The Facts of This Case**

The *amici* understand that Judge Grasham has extensive expertise in studying the historical underpinnings of early bar admissions cases, as well as the arbitrary nature of early bar admissions criteria and how the "good moral character" standard has been exploited in the past to target individuals that state bar officials viewed as inferior or undesirable[5].

The danger of arbitrary and discriminatory decision-making in bar admissions cases still exists today, it only manifests in different form and focuses on different characteristics. Persons such as the Amicus filers in the index case are permitted to submit an amicus brief to "offer[] their historical perspective and specialized knowledge as amicus curiae." *Wilderness Watch v. Jackson*, No. 1:23-cv-295-CWD, 2023 U.S. Dist. LEXIS 209309, at *10 (D. Idaho Nov. 20, 2023) (emphasis added). There can be no better specialized knowledge on a particular historical subject than prominent law review articles authored by several of the Nation's leading experts on the topic. *See United States v. Yates*, No. 1:21-cr-00116-DCN, 2023 U.S. Dist. LEXIS 138381, at *4-5 (D. Idaho Aug. 7, 2023) (observing that law review articles can be more helpful to a court in learning a historical perspective than a paid expert historian).

Therefore, the *amici* respectfully request this Court to observe the following law review articles in deciding Witzke's federal bar admission:

- The Other Bar Hurdle: *An Examination of the Character and Fitness Requirement for Bar Admission.* 48 Mitchell Hamline L. Rev. 500. Attached hereto as **Exhibit A**; and

- *The Troubling Rise of the Legal Profession's Good Moral Character.* 82 St. John's L. Rev. 1037. Attached hereto as **Exhibit B**.

---

[5] *See generally* Debora Kristensen Grasham, Ida Leggett: *Idaho's First African American Woman Lawyer and Judge*, 65 Advocate 28 (2022); Debora Kristensen Grasham, *Early Women Lawyers Who Helped Secure the Right to Vote in Idaho*, 63 Advocate 16 (2020); Debora K. Kristensen, *First 50 Men in Idaho Law*, The, 53 Advocate 54 (2010); Debora K. Kristensen, *Five Men Who Made the First Idaho Woman Attorney Possible*, 48 Advocate 11 (2005).

## CONCLUSION

While Witzke is likely the first and only bar applicant to pursue federal law licensure in this Court in the absence of Idaho State Licensure, this should not discourage the Court from deviating from "the norm" and granting Witzke's Petition. Here, Witzke is setting out to do something he loves; his life's passion that he has pursued his entire adult life. That of practicing law as part of a profession that is both distinguished and difficult to attain. Most importantly, the public has an interest in being able to be represented by a competent, skilled, and passionate legal professional like Witzke to advocate for their interests, and the public at large will unjustly suffer if Witzke is unable to perform that advocatory function due to the arbitrary denial of legal licensure. As this Court is surely cognizant of, there is a need for attorneys in Idaho that are available to represent indigent litigants, and granting Witzke's admission will advance a strong public policy in favor of rural Idahoans in need of access to low cost/volunteer legal services.

For the foregoing reasons, the *amici* respectfully request that this Court GRANT Witzke's Petition for licensure and that it issue him a license to practice law before this Court.

RESPECTFULLY SUBMITTED,

DATE: March 8, 2024

> Gregory R. Rauch ISB# 7389
> Alex Gluszczak ISB# 12260
> Magyar, Rauch & Associates, PLLC
> Attorneys at Law
> 326 E 6th Street
> Moscow Idaho 83843
> Tel: (208) 882-1906
> Fax: (208) 882-4540
> Email: rauch@mralegal.com,
> eService: holt@mralegal.com
>
> *Attorneys for Amicus Curiae*

AMICUS CURIAE BRIEF OF SEVERAL MEMBERS OF THE BAR OF THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF IDAHO - 14

## CERTIFICATE OF SERVICE

      I hereby certify that at the time this Brief was filed through the ECF system, an electronic copy will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

      Gregory R. Rauch ISB# 7389
      Alex Gluszczak ISB# 12260
      Magyar, Rauch & Associates, PLLC
      Attorneys at Law
      326 E 6th Street
      Moscow Idaho 83843
      Tel: (208) 882-1906
      Fax: (208) 882-4540

      *Attorneys for Amicus Curiae*